The next case for argument is 23-1474 Finkle v. McDonough. May it please the Court, Kenneth Carpenter appearing on behalf of Mr. Philip Finkle. At issue in this case is the question of regulatory interpretation. It deals with the regulatory provision that creates a presumption of aggravation for a condition that preexisted service. In this case, we are dealing with a 1972 board decision that was attacked under the clear and unmistakable error statute to review what was done in 1972. That review was performed by the board and they denied or found that there was no clear and unmistakable error in the 1972 decision. Before the Veterans Court, we presented the issue of whether or not the regulatory provision under 38 CFR 3.306B was applicable. Are you going to be focusing on your blue brief argument or your gray brief argument today? I'm just curious. Well, I think I'm going to be focusing on both, Your Honor, because we responded in the reply brief to the arguments that were made by the government as to what was or was not in the 1972 decision. And we believe that it's the contents of the 1972 decision that dictate the outcome of this case, which is that the Veterans Court was required to interpret whether or not the subsection B provision of the VA's regulation at the time did or did not apply. Are we talking about 3.606B? Is that the regulatory provision? Yes, yes, 3.306B. What was the legal error? I read your brief to the CAVC and it said, oh, there was legal error in the 1972 decision. It didn't specify what or why. And I read your blue brief, I couldn't figure that out. So when I finally read in your gray brief, first off, Mr. Carpenter, the gray brief, I kind of stubbed my toe when you said on page two that you're not asking us to determine whether there was Q. No, that's correct, Your Honor. Meaning there was no legal error. No. Q is the requirement to revise. I know. And you revise on the basis of if there was a legal error in the 1972 decision. Yes, Your Honor. But as I understand the criteria that has been imposed by the Veterans Court, they do not make the ultimate decision. They simply make the decision as to whether or not the law was or was not correctly applied. In the context of clear and unmistakable error. So that they don't do a merits review, they simply review the legal question as to whether or not this regulatory provision. I don't quibble with that. The more important question is, what is your legal argument here? And when I look at page two, pardon me, page two and three, five, you make the argument about a predicate piece of evidence. And I think what you're trying to argue is that to trigger the duty of the VA to rebut the presumption, so to put the presumption in play, the veteran doesn't actually have to make a showing of an increase in severity. He has to produce some evidence that could lead to that conclusion. Yes. And if he presents that predicate evidence just to initiate the subject, then the burden shifts to the government to rebut the presumption. Right. And that shifting part only applies. That is the argument. That is the argument. That is the argument presented in the blue brief. Well, I believe that it was presented at page six, the first paragraph at the last sentence. Page six. In which it says. The last sentence on page six. Yes.  This says the Veterans Court correctly note underline required to apply the law as existed. That's true. No question about that. Right. But in the last sentence, it says, nonetheless, the Veterans Court did not. On page six of your blue brief. Yes, Your Honor. There is no last sentence. No, in the first paragraph. Oh, the first paragraph. I'm sorry. Yes, the last sentence in the first paragraph. I'm sorry if I was not clear. Okay. It didn't provide its interpretation. Oh, so the problem here was that the Veterans Court didn't understand what your argument was because you didn't present it to them. Well, Your Honor, we. How does this sentence that you just read to me preserve this argument about what amount of evidence it takes to trigger the presumption? Because the question is. In the blue brief. In the blue brief. In the blue brief. Where is that argument? I believe that we presented a question of regulatory interpretation that was not addressed below. By not identifying it until the gray brief. No, I'm talking about below, before the Veterans Court. Before the Veterans Court. That's not what we're talking about here. I'm talking about whether you waived this argument by presenting it in the gray brief. And if the best you can do is the sentence starting with nonetheless on page six, I don't think you've succeeded. Because, you know, Mr. Carter, we have rules of engagement in this court working with these cases, and it's all very technical and complicated. And I have a lot of sympathy and understanding for this argument that shows up in the gray brief. But it's a little unfair to us and to the courts on the other side. Well, Your Honor, it's my understanding that I have the obligation to present a question of regulatory interpretation to get within this court's jurisdiction. It's sufficient just to say you think there is one, and then to present it, and then to actually present everybody with the argument in the reply brief. And the argument was, in the opening brief, that this regulation applied. The board did not apply it. In fact, they found that. The argument in the blue brief of why the rule was not followed, according to the blue brief, was because there was a total failure by the VA to rebut the presumption. And it wasn't about, as Judge Clevenger pointed out, the important factual predicate of whether there was an increase in severity in the first place to even trigger the presumption. So that's why I was asking, are you going to be arguing your blue brief or your gray brief today? Because the blue brief was really about this whole, did the board in 1972 fail to rebut the presumption of aggravation? And here, the gray brief was, well, here's the argument for what is required to even trigger the presumption. So those are two different arguments. That's why I'm with Judge Clevenger, where I'm trying to find out, where did you make what you argued in your gray brief, your legal argument in your gray brief, in your blue brief, which seemed to me to be entirely devoted to the rebuttal question? As I understand the procedure, I am not permitted to argue the merits before the Veterans Court. I am not allowed in the context of an appeal of a denial of duty. Well, I guess another question is, are you saying you couldn't have made the argument you presented in your gray brief in your blue brief? No, I'm trying to say that what happened here was that the board, in its review of the 1972 decision, said that this provision of law was not applicable. And I appealed that determination to the Veterans Court and presented that issue that, under the correct interpretation, the board, in its review of the 1972 decision, made an error of law that that provision was not applicable. So to me, the only issue is whether or not that provision is or is not applicable. The Veterans Court did not address the issue. I was simply following this. You didn't present them with the reason why they had to. You didn't argue that you had presented sufficient evidence to trigger the duty to rebut. Because it's my understanding, and I may be wrong, that I am prohibited from doing that by the rules at the Veterans Court, that I may not re-argue the merits. You're not re-arguing the merits. You're arguing a legal question. What evidence does it take to trigger the presumption requiring then the VA to rebut the presumption? But the decision of the board was, is that this provision did not apply. That seemed to me to be a yes or no legal question as to whether or not this regulation did or did not apply. And you have to give a reason why there's error. Simply to say there's error and, oh, I'll tell you when I get to the federal circuit, I'll tell everybody what the error is. It is my understanding to do that would be arguing the merits. If I am wrong in that, then that is my error, and I accept that responsibility. Is that what's created this problem we've had since 1990, 1992, when I first met you, arguing here? Because this argument has gone on for many, many years, Mr. Carpenter, about this almost, you know, good argument. First the argument in the blue brief, first the one before the CVC, then the one in the blue brief, then the one in the gray brief, and then the one with the argument. And, Your Honor, with all due respect, I do not see any resolution to that in the cases that have been handed down that explains to an advocate how you present that. And I will, in the very next opportunity I get, do that and present it in that way. Can I, let me insert myself. I agree with everything that's been said, but I do, the way, trying as hard as I could to understand what it is you were arguing, the, at least, not in your blue brief, but at least before the CAVC, it appears that you made a variation of the argument, which you say, it says at page three, the board found that the 1972 decision, that the appellant's back injury was not aggravated by service. That was the finding by the board. And in your opening brief, you argued that the board failed to recognize that his back condition worsened during service. Now there's no regulatory argument, there's no saying this is a violation of the regs or this contravenes the regs. But the CAVC and the board took you on, on your argument that there was aggravation during service and concluded there was not. So I get to the same place, which is I don't know where you go for appeal, even if it had been preserved in blue. I think there is an argument made with regard to whether there was aggravation of service that would trigger the presumption below. And they made a fact finding that it was not, that there were two different injuries and that the L4 versus the L1 was based on the fact that the L4 was a different injury than the L1. End of story. No finding of aggravation. I don't know how we reverse that or even review it, certainly, here on appeal. And because this is in the context of CUE, I am not able to re-argue the underlying facts. So the underlying facts, the conclusion, which are not subject to our review, are that there was no increase in severity during his five days of service. And so where does it get you? If there is no evidence and no indication and no conclusion of severity, how do you fit within the reg you are talking about? Because under the reg, the B subsection of that reg creates a regulatory presumption that must be rebutted. The finding of fact may create a presumption of aggravation kicks in when there is an increase in severity in service. Increase in severity of service, as I read the reg, is the predicate to the presumption applying. Do you disagree with that reading of the reg? Not that reading of the reg. But my problem is that the statute says what the regulation says in subsection A, and it makes no mention of presumption. That it shall be presumed that any condition that was noted at entrance was aggravated by service unless. That language is not in there. That still says where there is an increase in disability during such service. That's correct. So again, the predicate every time is there has to be an increase in disability, and there was a finding that there was no increase in disability. But the finding made by the board did not use the statutory or regulatory language. They made a different finding, and in that way, they failed to correctly apply the regulation that allows for that shifting of the burden to go to the veteran. And under the facts of this case, there was a finding, there was evidence acknowledged by the board in 72 that there was an injury that was resolved. And it was resolved before he entered service. That's different from the injury he got from the water skiing. No, Your Honor. Two different conditions. Well, with respect, Your Honor, the medical board physician made the assumption that there were two different conditions and attributed it to the skiing accident. And the 1972 board decision also concluded that the appellant's preexisting injury did not increase in severity during service.  And that's not the legal standard under the statute or the regulation. What is the legal standard for what it takes to show an increase in severity? Unless there is a specific finding that the increase in disability... What are you reading from? I'm reading from the language of both the statute and the regulation, the regulation at 3.306A. And it says that there must be a specific finding that the increase in disability is due to the natural progression of the disease. That's how you rebut. No, Your Honor. That assumes an increase. Okay. All right. Let's hear from the other side. Please proceed. From reading Mr. Carpenter's blue brief, what did you understand to be the precise legal question he was presenting? It may please the court. So, Judge Clevenger, we understood that Mr. Carpenter's submission to be that the VA needed to provide clear and unmistakable evidence to rebut the presumption of aggravation under these circumstances. And we pointed out in our response brief that that is not the correct standard, or that's the correct standard only when the presumption of aggravation is triggered. Here, there was an unrevealable factual finding by the board. I understand. What you're saying is you read the blue brief to be, as Judge Chen suggested he read it, which was directed as a question of whether there had been a government that satisfied its duty to rebut the presumption. That's right. Is that the argument you understand him to be making in his gray brief? So, I think there's a different argument in the gray brief, which goes to what showing the veteran has to make to get to the presumption of aggravation. To trigger it. To trigger it. That's right. And that's a different argument. That's a different argument. We disagree with that argument as well, but that is a different argument. Yes, I agree. The reason we disagree with that gray brief argument is for some of the reasons that were suggested towards the end of the questioning, which is the language of the regulation and the statute are essentially the same. They both say, I'll read it, a pre-existing, this is 1153, 38 U.S.C. 1153, a pre-existing injury or disease will be considered to have been aggravated by active military, naval, air, or space service where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease. If that regulation read where there is evidence of an increase in disability, if they said that, then I think you would agree Mr. Carpenter's gray brief argument has merit. Yes. Yes, Your Honor. Then that would be a cognizable regulatory argument. Absolutely. But it doesn't say that. In 3.306A uses the same language as 1153. What about the statutory language in 1153 at the end, unless there is a specific finding that the increase in disability is due? Do you understand that language to be setting the standard for the secretary's obligation to rebut the presumption once it's triggered? Yes, Your Honor. And then that standard is developed in the regulation further. Because Mr. Carpenter seemed to disagree with that when he was sitting down, that's why I asked. Yes. And that's where 3.306B's language about clear and unmistakable evidence comes in. So that's what the regulation says is required to rebut. And the last, unless there are other questions, the last point I'll make is that our argument is consistent with the case law we cite in our brief, including Wagner, where this court said the burden of establishing aggravation falls upon the veteran. I don't understand, Mr. The burden to trigger the presumption, regardless of what evidence is required to trigger it, I don't understand Mr. Carpenter to be arguing that that burden doesn't lie with the veteran. I think he agrees with that. The question is, what evidence does it take to trigger this obligation for the secretary to come in and say, Oh, it wasn't just due to the natural progression. Fair enough. But again, that takes us back to the actual language used in the regulation of the statute, where there is an increase in disability during such service, as opposed to where there is evidence of an increase in disability during such service. Well, also, the past tense underwent no increase. This is in terms of the last sentence in B. That's right. Aggravation may not be conceded. That's right. So again, if there were language to the effect of where there is evidence showing or something, or evidence suggesting, then it's a different case. But that's not what the language says. What does that last sentence mean that Judge Clevenger just referred to? I mean, it's weird to say aggravation may not be conceded. Conceded by the Veterans Administration? It is. I think so. I think so. It's a weird, weird choice. I agree. I would read it to say there is no aggravation where, which is emphasizing the point, I think, in A. Well, you can read it as the benefits that you would ordinarily have gained by showing aggravation will not be given to you where the basement secretary has successfully rebutted. I think that's right. And it goes on to say on the basis of all the evidence of record. So it's telling the VA you have to look at everything holistically when making this determination. Well, it suggests also that on the question of whether or not the presumption was triggered is based on all the evidence of record as well. And that finding was made in 72 and then again here on QE by both the board and the VA. The finding that there was no increase. That's right. And that's not reviewable by us. That's right. To the extent that Mr. Finkel relies on the L1, L4 distinction in the record to show an increase in severity, I believe that's his point. The L1 was a pre-induction from a pre-induction medical exam that was taken before this water ski accident. That's correct? You know, there were several different iterations of the examination. And it might have been that the L1 was also reaffirmed after the water skiing. Because there was a water skiing accident in July. And then there was a note in the file that the injury was resolved. Not the injury, but the symptoms were resolved in October. Was that the symptoms of the water skiing accident? It says the back. There's a connection resolved with the back injury. So ultimately this is a factual issue. But I think the bottom line is that back injuries can be tricky. And this was all based on how they were presenting on a particular day. So it may very well be that symptoms weren't evident on a particular day. But the injury continues. And the question is whether the injury gets worse, not whether the symptoms are showing up on any given day. It was the first day of basic training that Mr. Finkel was unable to perform his basic training. There's no indication of anything happening during service that would have explained that. How many days had he spent? It was like six days. Yeah, about six, seven days. And he didn't indicate that something had happened during that six or seven day period. There's nothing on the record indicating that, that's all. Thank you. Thank you. We'll restore two minutes of rebuttal. Just to clarify, Your Honor, the appendix 51, the, I believe, second page of the 1972 board decision, the board lists the evidence. And in listing that evidence, the board explicitly notes that the... Where are we? On what paragraph? The first full paragraph. There's a sentence that describes the extent of the service. And it was from October 8 to October 28 of 1968. And then the first full paragraph on the page that begins with the enlistment. And that describes the evidence that the board was operating under. And that evidence included a notation in his March 1968 exam that whatever injury he had at the L1 had been resolved, including the accident that happened in skiing in July. It was the medical board in service while he was on active duty. Where does it say that? Where does it say that that was including his accident, skiing accident? Oh, I'm sorry. You have to look at the medical board report, which is a couple of pages earlier at Appendix 41. That gives a final... When was this report? This is October 18. This is when he's on the way out. October 21. The medical board report... If you look at the very bottom of 41, it says 18 October. Well, on the preceding page, it says 21 October. But I do see that, Your Honor, I think. On the bottom of 41? Yes. Norenberg, who signed it. Oh, I see it. I see it now. I see it now. Yes. But if you back up to Appendix 39, which was what his entrance examination was in March of 1968... I thought you were making a point about 41. Now you're eliding away from that? No, no. You have to read them together because that was the evidence. And there is a notation on this exam report that was originally done in March that is dated in October of 68. The date appears... October 8. No, 4 October. It's in longhand, 4 October, 64... Where are you on that piece of paper? Which block are you in? 74. Isn't this discussion about re-evaluating their evaluation of the evidence before them? And therein lies my problem, Your Honor, is that I seem to be unable to get review of facts because those were the facts that were decided in 72. But those are the very facts that did trigger the presumption of aggravation because there was a separate diagnosis of the condition. Okay, I know. You've recognized that's your problem. Do you think we can solve that by reviewing the facts? No, Your Honor. But I do think you can resolve that by interpreting this regulation and to interpret this or to send it back to the Veterans Court. It seems like we have no dispute on what the regulation requires. You're just disputing. The government says that in order to trigger the presumption, you need to show there was aggravation. All the fact buyers who have looked at it say there was no aggravation. Those are the facts, right? No, Your Honor. I'm sorry. I do not believe those are the facts. And I'm relying on what the 72 board decision described as being the evidence before it. And the evidence before it showed that there were multiple injuries pre-service that had been resolved as of 4 October. How does that show an increase in severity? Because thereafter, while on active duty, he gets an actual diagnosis of the herniated disc. And that describes a different condition at L4 and L5 than was noted previously. You're disputing whether there was sufficient evidence to establish there was an aggravation of injury. And the 72 board, you're disputing that finding of all the tribunals below. But the issue is, was there an aggravation that caused an additional injury that took place while he was on active duty? And if we conclude that the legal argument you raised in your gray brief does not exist in your blue brief, then the gray brief argument is waived, right? Yes, Your Honor. Okay. Thank you. Thank you. Both sides in the case.